UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARCOS D. ARMENDARIZ,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. C05-0984-JCC-JPD<br><br>REPORT AND RECOMMENDATION |

    Plaintiff Marcos D. Armendariz proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner partially denied plaintiff's application for Disability Insurance Benefits ("DI") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA") after a hearing before an Administrative Law Judge ("ALJ"), finding that plaintiff met the disability requirements beginning June 10, 2003, but did not meet the disability requirements for the period between his alleged onset date, April 12, 2000, and June 9, 2003. For the reasons set forth below, it is recommended that the final decision of the Commissioner be reversed and remanded for further proceedings.

REPORT AND RECOMMENDATION
PAGE -1

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was 53-years old at the time of his hearing before the ALJ. (AR 122). He has a high-school education and has worked as a truck driver, a program aide in a drug and detoxification center, and a funeral driver and morgue attendant. (AR 147-54).

On May 29, 2001, plaintiff applied for DI and SSI benefits, alleging a disability onset date of April 12, 2000, due to sleep apnea, hepatitis C, arthritis, degenerative changes of the back, neck, and knees, and status-post total hip replacement. (AR 122-24). Plaintiff's applications were denied initially and on reconsideration. (AR 90-93, 99-101). Plaintiff timely requested a hearing.

On February 17, 2004, the ALJ held a hearing and heard testimony from plaintiff, medical experts, Kenneth Sawyer, M.D., and C. Richard Johnson, M.D., and vocational expert, Steven Van Houten, M.S. (AR 39-82). On June 7, 2004, the ALJ issued a partially favorable decision finding plaintiff disabled beginning June 10, 2003. (AR 20-30). However, the ALJ found plaintiff was not disabled from his alleged disability onset date, April 12, 2000, through June 9, 2003. *Id.* Plaintiff appealed the decision to the Appeals Council, which declined to review plaintiff's claim. (AR 6-8). Plaintiff appealed this final decision of the Commissioner to this Court. Plaintiff seeks review of the ALJ's decision that he was not disabled prior to June 10, 2003. (Dkt. #18 at 1).

## II. JURISDICTION

This Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## III. STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citations omitted). Substantial evidence is defined as more than a mere scintilla but

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Smolen,* 80 F.3d at 1279. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Smolen*, 80 F.3d at 1292).

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77.

## IV.  EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *See also Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must establish that he is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant does so, then at step two, the claimant must establish that he has one or more medically-severe impairments or combination of impairments that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who meets one of the listings for the required twelve-month duration requirements is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether the claimant can still perform that work. *Id.* If the claimant is not able to perform his past relevant work, then the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1099-100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  DECISION BELOW

On June 7, 2004, the ALJ issued his decision, finding:

1. The claimant met the disability insured status requirements of the Act on April 12, 2000, the alleged disability onset date, and he has sufficient quarters of coverage to remain insured through at least December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. The claimant has sleep apnea; hepatitis C; arthritis; degenerative changes of the back, neck and knees; and status-post total right hip replacement. These impairments are severe, but they do not meet or equal the criteria for any impairment listed in 20 C.F.R. Subpart P, Appendix No. 1.

4. The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of information contained in the medical reports and other evidence of record.

5. From the alleged disability onset date to June 9, 2003, the claimant retained the residual functional capacity to perform light work. He could sit and stand/walk 6 hours each in an 8-hour day, and should have no strenuous pushing or pulling with his lower right extremity. He could occasionally climb stairs but he could not climb ropes, ladders, and scaffolds. He could occasionally stoop, but not kneel, crouch, crawl. He needed to avoid heights or hazards. He could have no more than limited contact with the public and co-workers. Beginning on June 10, 2003, he has the functional capacity for sedentary work, as well as his other limitations.

6. The claimant's impairments and limitations prevent him from returning to his past relevant work.

7. The claimant was born on September 14, [XXXX][1] and he has at least a high-school education.

8. If the claimant could perform a full range of light work, 20 C.F.R. §§404.1569, 416.969 and rule 202.13 of Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion that the claimant is not disabled. On and after June 10, 2003, his vocational factors meet rule 201.12, mandating a finding that he is disabled.

9. Although the claimant was unable to perform a full range of light work through June 9, 2003, he was capable of unskilled jobs such as assembler

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -5

(DOT 734.687-011), with 6,000 jobs in the region and 142,000 jobs nationally; press operator (DOT 363.685-010), with 1,500 regional jobs and 90,000 jobs nationally; and mail clerk (DOT 209.687-026), with 12,000 regional jobs and 136,000 jobs nationally. Thus, he was not disabled within a framework of the above-cited rule.

10. The claimant is under a disability, as defined in the Social Security Act, beginning June 10, 2003 and continuing at least through the date of this decision. He was not disabled through June 9, 2003.

(AR 29-30).

## VI.  ISSUES ON APPEAL

A.  Did the ALJ err by failing to evaluate properly whether plaintiff's alleged mental impairments are severe impairments at step two?

B.  Was the ALJ's finding that plaintiff's disability did not begin until June 10, 2003, supported by substantial evidence?

C.  Did the ALJ err by failing to include all of plaintiff's limitations in his assessment of plaintiff's residual functional capacity?

## VII.  DISCUSSION

A.  <u>The ALJ's finding that plaintiff's mental impairments did not constitute severe impairments is not supported by substantial evidence</u>.

Plaintiff contends the ALJ's step two determination that he does not have severe mental impairments is not supported by substantial evidence, and argues that the medical evidence shows he suffers from severe mental impairments, i.e., cognitive disorder, personality disorder, pain disorder, and depression. (Dkt. #18 at 16-18). At step two, a claimant must make a threshold showing that his medically-determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 416.920(c). Basic work activities refer to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.' " *Smolen*, 80 F.3d at 1290. The step-two

inquiry has been characterized as "a de minimis screening device to dispose of groundless claims." *Id.* An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id.*

Here, the record demonstrates that plaintiff suffers from depression, pain disorder, personality disorder, possible cognitive disorder, and severe mental impairments that meet the more than *de minimis* threshold. In February 2002, examining psychologist, Kerry Bartlett, Ph.D., performed a psychological evaluation of plaintiff, wherein he diagnosed plaintiff with a cognitive disorder not otherwise specified ("NOS"), a history of polysubstance abuse, and a provisional assessment of personality disorder NOS with antisocial features. Dr. Bartlett opined that plaintiff had a GAF score of 50, indicating a serious impairment in occupational functioning. (AR 357-65). In February 2003, Dr. Bartlett completed "written interrogatories" indicating that plaintiff's "chronic pain and fatigue" and "organic mental disorder" caused marked limitations in daily activities and social functioning; constant difficulty with concentration, persistence, or pace; and repeated episodes of deterioration or decompensation. (AR 416-20).

In April 2002, DDS reviewer, Anita Peterson, Ph.D., diagnosed plaintiff with ADHD predominantly inattentive, depression NOS that was probably dysthymia, a personality disorder with antisocial features, and a substance abuse disorder in full, sustained remission. (AR 392-409). She found that plaintiff had mild limitations in daily living activities and social functioning; moderate difficulty with concentration, persistence, or pace; and no episodes of decompensation. *Id.*

In August 2003, another examining psychologist, Arthur D. Williams, Ph.D., diagnosed plaintiff with pain disorder associated with psychological factors, depressive disorder NOS, and the need to rule out cognitive disorder NOS. (AR 433-39). Dr. Williams also found that plaintiff's understanding is low to average, memory is borderline average, and processing speed is extremely low. (AR 439).

REPORT AND RECOMMENDATION
PAGE -7

Further, medical expert Richard Johnson, M.D., testified that he agreed with Dr. Bartlett's diagnosis of cognitive disorder and personality disorder. Although Dr. Johnson stated that Dr. Bartlett probably included plaintiff's pain and physical complaints in his GAF score, Dr. Johnson testified that it would not be improper to consider pain and physical complaints when making the global assessment of functioning. (AR 53). Dr. Johnson testified that plaintiff had mild limitations in daily living activities, moderate difficulty with social functioning, and moderate difficulty with concentration, persistence, and pace. (AR 50).

The ALJ relied upon Dr. Williams' findings in determining that plaintiff does not have a severe mental impairment. (AR 25-27). However, these findings do not constitute substantial evidence to support the ALJ's determination. *Edlund v. Massanari*, 253 F.3d 1152, 1158-59 (9th Cir. 2001). In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "clear and convincing reasons." *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without " 'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Here, the ALJ's reasons were neither "clear and convincing" nor "specific and legitimate," nor were the ALJ's reasons based on substantial evidence in the record as a whole.

With regard to Dr. Bartlett's opinion, the ALJ noted that Dr. Bartlett's report was "laced with words suggesting tentativeness and uncertainty, and his diagnosis of the claimant's condition were only 'possible' or provisional." (AR 24). The ALJ further found Dr. Bartlett's conclusions inconsistent with his examination findings, and with the testimony of Dr. Johnson who testified that Dr. Bartlett had included pain and physical complaints in his

REPORT AND RECOMMENDATION
PAGE -8

evaluation. *Id*. The ALJ also rejected Dr. Bartlett's February 2003 report, finding the report was prepared on a check-box form and was unsupported by clinical findings. (AR 25). Such concerns and speculation on the part of the ALJ do not amount to specific and legitimate reasons for rejecting Dr. Bartlett's opinion. Rather, the ALJ appears to have relied on his own doubts to reject the entirety of Dr. Bartlett's reports, including portions that Dr. Johnson deemed reliable. Although the ALJ relied on Dr. Johnson's testimony in rejecting Dr. Bartlett's opinion, Dr. Johnson actually testified that Dr. Bartlett's psychological evaluation was the most thorough and agreed with his diagnosis. (AR 50). Furthermore, the ALJ later rejected Dr. Johnson's testimony, the same testimony he used to reject Dr. Bartlett's opinion. (AR 26-27).

The ALJ's rejection of Dr. Peterson's assessment is also tainted by improper speculative inferences and assumptions. (AR 27). For example, the ALJ opined:

> Dr. Peterson's grounds for these limitations are equivocal, however. Her review of the record showed that the claimant was at time euthymic and inconsistent with a major depressive disorder. His examinations showed some difficulty when under time pressure, but that was not particularly significant. She noted that the claimant was able to persist at tasks and that he in fact had good social skills (exhibit 16F:3-4). All in all, the claimant's presentation at these examinations did not seem too far afield from what one might expect by any average person. Indeed, it is hard to find an impairment characterized by being "too ambitious."

(AR 27). In essence, the ALJ made a medical judgment that plaintiff's mental impairments did not significantly interfere with his ability to function on a regular basis. The ALJ also stated that Dr. Peterson's assessment was inconsistent with the assessment of Dr. Williams, but failed to provide specific and legitimate reasons to discount Dr. Peterson's opinions. To the extent the ALJ relied on these factors as evidence that plaintiff's mental impairments were not severe, the evidence is insubstantial and improperly based on the ALJ's own lay opinions.

The ALJ also rejected the testimony of medical expert, Dr. Johnson, finding Dr. Johnson's opinion inconsistent with the opinion of Dr. Williams, who found only mild limitations that would not impose any vocational restrictions. (AR 26-27). Contrary to the ALJ's assertion, Dr. Williams found significant pain symptoms related to pain disorder,

REPORT AND RECOMMENDATION
PAGE -9

depressive disorder, and possible cognitive disorder, which could present occupational problems. (AR 438). Again, the ALJ appears to have substituted his own lay opinion and applied a more stringent standard than is warranted at step two.

Step two of the evaluation process simply requires the plaintiff to show he suffers from impairments which impose more than *de minimis* restrictions on plaintiff's ability to perform basic work activities. This slight showing was more than adequately demonstrated in the record. Accordingly, the ALJ erred at step two of the sequential evaluation process, and remand is appropriate.[2]

    B.    <u>The ALJ's selection of June 10, 2003, as the disability onset date is not supported by substantial evidence</u>.

Plaintiff next complains that the ALJ selected an arbitrary disability onset date of June 10, 2003, based on the date of a physical evaluation report by plaintiff's treating physician Greg Stern, M.D., rather than fixing an onset date based on all of the medical evidence of record. In this report, Dr. Stern opined that plaintiff was limited to sedentary work[3] based on his arthritis; chronic cervical, thoracic and lumbar pain; daytime somnolence (probably due to sleep apnea); and chronic hepatitis C and fatigue. (AR 448-49). Plaintiff argues that Dr. Stern's June 10, 2003, report was substantially the same as Dr. Stern's December 24, 2002, report, which the ALJ erroneously rejected without providing clear and convincing reasons. (Dkt. #18 at 22; AR 25; 453-54). Plaintiff also argues that the ALJ failed to properly consider

---

[2]Plaintiff also contends that the ALJ failed to properly adhere to the Commissioner's special techniques for evaluating the existence and severity of mental impairments under 20 C.F.R. § 404.1520a. In light of the Court's conclusion that the ALJ's determination at step two was not supported by substantial evidence, the Court need not address plaintiff's argument that the ALJ failed to employ the proper evaluation technique. However, in reevaluating the severity of plaintiff's mental impairments on remand, the ALJ is also directed to utilize the special techniques for evaluating mental impairments set forth at 20 C.F.R. § 404.1520a and incorporate his findings into his decision.

[3]The ALJ concluded that plaintiff's restriction to sedentary work meets the criteria of rule 201.12, directing a finding that the plaintiff is disabled. (AR 28).

REPORT AND RECOMMENDATION
PAGE -10

other medical evidence showing that his hepatitis C, fatigue, and other injuries were causing significant limitations prior to June 10, 2003. (Dkt. #18 at 23-25). The Commissioner responds that the ALJ's selection of June 10, 2003, as the disability onset date was appropriate because it coincided with Dr. Stern's report and testing confirming sleep apnea and hepatitis C. (Dkt. #19 at 6).

For social security purposes, "the critical date is the date of onset disability, not the date of diagnosis." *Swanson v. Sec. of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985). "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20; *Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir. 1991). Where, as here, the cause of a plaintiff's disability is not traumatic, a determination of the onset of disability involves primarily an assessment of the medical evidence. *See* SSR 83-20. Where a claimant's allegation as to the onset date conflicts with the medical evidence, additional development may be required. *Id.* ("[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record."). *See also Armstrong v. Commissioner SSA*, 160 F.3d 587, 589-91 (9th Cir. 1998) (finding date of onset unclear and that the ALJ erred in failing to call a medical expert before inferring an onset date).

The ALJ must give convincing rationale for the onset date selected. SSR 83-20. That date should be set on the date when it is most reasonable to conclude that the impairment was severe enough to cause the inability to engage in substantial gainful activity for at least twelve months. *Id.* Under Social Security Ruling 83-20, the following guidelines should be used to determine the date of onset of disability:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symtomatology of the disease process. [¶] Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity .

REPORT AND RECOMMENDATION
PAGE -11

> . . before onset can be established. . . . [T]he date alleged by the [claimant] should be used if it is consistent with all the evidence available. . . . [T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record. . . . [¶] In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred sometime prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred..

SSR 83-20.

In this case, the ALJ failed to give convincing rationale for the onset date selected. The ALJ relied, in part, on the opinion of non-treating, non-examining medical expert, Kenneth Sawyer, M.D., who testified that plaintiff was capable of performing light work. (AR 26). The ALJ found Dr. Sawyer's testimony "consistent with the evidence overall" and thus gave his opinion "great weight." (AR 26). However, the ALJ also found that "the reports from Dr. Stern and others show that by June 2003 the combination of impairments, including hepatitis and sleep apnea, had increased his limitations to the point that he was capable of no more than sedentary work." (AR 26). Consequently, the ALJ selected June 10, 2003, as plaintiff's onset date.

The Court finds that the onset date selected by the ALJ is arbitrary, given the record. Dr. Sawyer offered no testimony that would assist in establishing a disability onset date. (AR 46-49). In addition, it does not appear that Dr. Sawyer could evaluate all of plaintiff's impairments, given that he stated that he could not express an opinion on plaintiff's sleep disturbances or hepatitis C because those are not his areas of expertise. (AR 48). The record, therefore, lacks a medical expert's opinion as to plaintiff's disability onset date.

Moreover, there is no basis in the record to conclude that plaintiff suddenly became disabled on June 10, 2003. Instead, it appears the ALJ selected June 10, 2003, as the disability onset date based on a report completed in June 2003 by Dr. Stern, finding that plaintiff was limited to sedentary work. However, Dr. Stern previously found that plaintiff was limited to

sedentary work in his December 2002 report based on the same diagnosis and limitations. The ALJ erroneously rejected Dr. Stern's earlier 2002 report without providing clear and convincing reasons. The ALJ stated as follows:

> The claimant then began treatment with Greg Stern, M.D. In July 2002, the claimant reported some right leg edema, and daytime somnolence consistent with sleep apnea (exhibit 24F:18). At an examination in August 2002, Dr. Stern noted that the claimant walked slowly but with no antalgia; the claimant had some pain on range of motion and deficit reflexes. The claimant continued to allege knee pain, hepatitis, knee effusion, and sleep disturbance. He had a normal sed rate but elevated rheumatoid factor and positive ANA (exhibit 24F).
>
> In December 2002 Dr. Stern opined that the claimant had arthritis of the knees, probably secondary to his hepatitis, chronic back and neck pain, sleep apnea, and fatigue from his hepatitis. He thought the claimant was capable of sedentary work (exhibit 24F:10-11). This report is considered, but at that time the claimant was able to walk on heels and toes, he could move about with normal gait and stance, straight leg raising was to 90 degrees, and there was no small joint stiffness (exhibit 24F:9). That examination supports some of Dr. Stern's assessment, but not a limitation to sedentary activity.

(AR 24-25).

The medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). This is because treating physicians are employed to cure, and thus have a greater opportunity to know and observe the patient as an individual. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. *Embrey*, 849 F.2d at 420-22. The ALJ may disregard the treating physician's opinion whether or not it is contradicted. *Magallanes*, 881 F.2d at 751. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing reasons supported by substantial evidence in the record. *Reddick*, 157 F.3d at 725. An ALJ must defer to a treating physician's opinion, even if controverted by other medical opinions, unless the ALJ provides specific and legitimate reasons based on substantial evidence in the record. *Magallanes*, 881 F.2d at 751.

Here, the ALJ asserted that he was disregarding Dr. Stern's medical opinion because Dr. Stern's examination of plaintiff supports some of his assessment, but not a limitation to

sedentary activity. (AR 25). The Court finds that these are not clear and convincing reasons for disregarding Dr. Stern's opinion that plaintiff is limited to sedentary activity. "Merely to state that a medical opinion is not supported by enough objective findings 'does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.' " *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (quoting *Embrey*, 849 F.2d at 421). The ALJ's rejection of Dr. Stern's opinion without clear and convincing reasons for doing so constitutes reversible error.

In addition, the ALJ erroneously ignored or rejected medical evidence that plaintiff was limited to sedentary work before Dr. Stern's June 10, 2003, evaluation. In July 2001, examining physician, Raymond West, M.D., diagnosed plaintiff with degenerative disc disease, low back stenosis, hepatitis C, status-post right hip replacement, and past history of heroin abuse. (AR 23-24, 349-53). Dr. West opined that plaintiff could stand or walk two to four hours in an eight-hour day, sit for six hours in an eight-hour day, lift ten pounds occasionally, and stoop occasionally, indicating the capacity for sedentary work. *Id.* The ALJ rejected Dr. West's assessment, finding it inconsistent "with the examination findings or other examination reports discussed in this decision, showing that the claimant presented without significant limitations, normal motor functioning, and a capacity for at least light work." The ALJ did not identify what examination findings and reports were inconsistent. Contrary to the ALJ's assertion, in April 2001, plaintiff's treating physician, Jeff Warner, D.O., opined that plaintiff could perform work as a telemarketer, a sedentary level job (DOT 299.357-014). (AR 338). In addition, in September 2001, Dr. Warner noted that plaintiff was able to lift ten pounds occasionally but could not carry ten pounds, and he had significant limitations in postural range of motion movements that further limited his ability to return to work. (AR 248-49).

By stating that plaintiff was not disabled before June 10, 2003, the ALJ improperly substituted his own judgment in the place of findings and conclusions of plaintiff's treating and examining physicians. The plaintiff was treated for many years for multiple impairments which,

REPORT AND RECOMMENDATION
PAGE -14

in combination, eventually became disabling. Exactly when plaintiff's impairments became disabling is unclear. Under Ninth Circuit law, an ALJ cannot make such an inference without the assistance of a medical expert. *Armstrong*, 160 F.3d at 590 (quoting *Morgan*, 924 F.2d at 1082-83). Therefore, on remand, the ALJ should enlist a medical expert to aide in determining the date of onset.

      C.    <u>The ALJ's RFC assessment and hypothetical to the vocational expert were not supported by substantial evidence.</u>

The plaintiff's final argument is that the ALJ failed to include all of his limitations and impairments in his RFC assessment and in his hypothetical to the vocational expert. (Dkt. #18 at 25). Because this matter is being remanded, the ALJ will be re-examining the plaintiff's RFC. This will mean new VE testimony at step five, if required.

## VIII. CONCLUSION

Accordingly, the Court recommends that the final decision of the Commissioner be reversed and remanded for further proceedings not inconsistent with this opinion. A proposed Order accompanies this Report and Recommendation.

DATED this 2nd day of February, 2006.

*/s/ James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge